UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JUSTIN D. CAMPBELL, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) 1:10-CV-278 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| MCMINN COUNTY, TENNESSEE, | ) |
| MCMINN COUNTY SHERIFF'S | ) |
| DEPARTMENT, FORMER SHERIFF | ) |
| STEVE FRISBIE, DEPUTY SHERIFF | ) |
| ALICIA SCRUGGS, DEPUTY SHERIFF | ) |
| LORI MCDANIEL, DEPUTY SHERIFF | ) |
| DUSTIN CRANFIELD, DEPUTY SHERIFF | ) |
| AMANDA BRICKER, JAIL NURSE KAY | ) |
| STANSBURY, | ) |
| | ) |
| *Defendants*. | ) |

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendants McMinn County, Tennessee, McMinn County Sheriff's Department, Former Sheriff Steve Frisbie, Deputy Sheriff Alicia Scruggs, Deputy Sheriff Dustin Cranfield, and Deputy Sheriff Amanda Bricker (collectively, "Defendants") (Court File No. 42).[1] Plaintiff Justin D. Campbell ("Plaintiff") submitted a response to Defendants' motion for summary judgment (Court File No. 49) and Defendants submitted their reply (Court File Nos. 50, 51). For the foregoing reasons, the Court will **GRANT IN PART** Defendants' motion for summary judgment (Court File No. 42). Plaintiff's federal claims will be **DISMISSED** against all Defendants and Plaintiff's state law claims will be **REMANDED** to the Circuit Court of McMinn County.

---

[1] In Defendant Aisha Scruggs' affidavit, she notes the proper spelling of her first name is "Aisha" not "Alicia" (Court File No. 42-3). The Court will make note of the proper spelling of her name from this point forward.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2009, Plaintiff was arrested and transported to the McMinn County Detention Facility ("Detention Facility") (Court File No. 45-1, at 8, 31). On September 10, around 6:00 p.m., Plaintiff was emerging from the shower when he was struck in the head by an inmate known only to Plaintiff as "Nick" (*id.* at 33-35). After striking Plaintiff, "Nick" allegedly accused Plaintiff of stealing his honeybun. Plaintiff claims he was "sort of blacking out" and that it was possible he may have been hit more than once (*id.* at 36). However, he also admits the incident lasted a matter of seconds and that the parties "mutually divided" and "just kind of went away from each other" (*id.* at 37). No jail officials observed the altercation between Plaintiff and "Nick."

After the incident, Plaintiff went to his bed (*id.* at 40). At 11:00 p.m., Plaintiff claims he turned in an emergency medical request form to "Officer Shea" (*id.* at 43-45).[2] He claims he also asked her for ibuprofen but she told him he would not be getting any medical help. Plaintiff gave a form to "Officer McDaniel" at approximately 11:30 p.m. that evening and 6:00 a.m. the following morning (*id.* at 46).[3] Plaintiff claims he submitted a nurse's form to an officer every time one came in the cell, which he avers was approximately every two hours (*id.* at 40).

On the morning of September 11, Plaintiff made a court appearance and returned to the Detention Facility around 1:00 p.m. (*id.* at 47, 50). While being escorted to his cell block by a jailer named "Cranfield," Plaintiff claims he asked about getting medical assistance and that Cranfield said

---

[2] "Officer Shea" is presumed to be Deputy Sheriff Aisha Scruggs as named in the amended complaint.

[3] The jailer known as "McDaniel" is presumed to be Deputy Sheriff Lori McDaniel as named in the amended complaint.

2

he would try to get Plaintiff some help.[4] Later that evening, Plaintiff was transferred from the CX cell block to the DX cell block by Defendant Bricker (*id.* at 51). While in the DX block, Plaintiff claims he felt threatened by the inmates so he rang an alarm for help (*id.* at 52-54). No one physically touched him. Two officers, one of whom Plaintiff identified as Officer McDaniel, came and took Plaintiff out of the DX Block. McDaniel moved Plaintiff into the hallway; then Cranfield took him to the "drunk tank" where he waited by himself for approximately thirty minutes before being transported to the Polk County Jail around 11:30 p.m. or midnight with respect to charges he faced in Polk County (*id.* at 57-59). Plaintiff claims he did not see or receive assistance from a nurse at any point while he was in custody at the Detention Facility following the incident with "Nick" (*id.* at 50-51).

Plaintiff remained in the custody of Polk County for less than a day and was finally released on September 12, 2009 (*id.* at 60). Upon release, he immediately went to SkyRidge Hospital to receive medical treatment. Plaintiff claims he had to receive surgery on September 21, 2009, which included "repair of fractured bone with a metal plate in [his] face which is permanent" (Court File No. 49-2 ¶ 3).

Plaintiff did not encounter now-former Sheriff Steve Frisbie at any point while in custody at the Detention Facility. His only interaction with Sheriff Frisbie was post-release (*id.* at 56, 62-64). Plaintiff claims he met with Sheriff Frisbie on September 15, 2009, to ask the county to cover his medical expenses.

Defendants removed this case from the Circuit Court of McMinn County on October 12,

---

[4] The jailer known as "Cranfield" is presumed to be Deputy Sheriff Dustin Cranfield as named in the amended complaint.

2010. On August 22, 2011, Plaintiff filed a motion to amend the scheduling order and complaint to which Defendants did not object. Accordingly, the magistrate judge granted Plaintiff's motion and an amended complaint was filed on September 12, 2011. On November 28, 2011, the Court granted Defendant Jail Nurse Kay Stansbury's motion to dismiss due to insufficient service of process and the expiration of the applicable statute of limitations. The remaining defendants filed a motion for summary judgment on December 16, 2011.[5]

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial."

---

[5] One of Defendants' contentions is that Plaintiff failed to properly serve the remaining defendants, with the exception of McMinn County, after filing his amended complaint. This issue would have been more appropriately raised in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5). Nevertheless, even if Defendants' allegations are correct, the Court concludes this issue is moot in light of the Court's current order and memorandum. The Court notes Plaintiff did not respond to Defendants' allegations regarding insufficient service of process in his response to Defendants' motion for summary judgment. Plaintiff's failure to respond effectively waives any objections that he may have had on this matter.

4

*Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.  42 U.S.C. § 1983 CLAIMS

Plaintiff brings a 42 U.S.C. § 1983 claim against Defendants for alleged constitutional violations. To state a general claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). When a party brings a suit against an officer in his official capacity, it is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suits against

a municipality also involve a two-prong inquiry. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The court must determine: (1) whether the plaintiff has been deprived of a constitutional right; and (2) whether the municipality is responsible for the violation. *Id.*

A municipality cannot be liable under a *respondeat superior* theory for § 1983 violations. *Id.* Rather, municipalities are liable when they "have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Additionally, even absent a policy "officially adopted" by a municipality's officers, a § 1983 plaintiff "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

Failure to adequately train or supervise officers can rise to the level of a *de facto* unconstitutional policy or custom if a plaintiff can show: "(1) the training or supervision was inadequate to the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "Only where a municipality's failure to train its employees in a relevant respect

evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Loggins v. Franklin Cnty.*, 218 F. App'x 466, 473 (6th Cir. 2007) (quotation omitted).

The Court will address Plaintiff's § 1983 claims against each Defendant in turn.

### A. Individual Officers

Plaintiff's § 1983 claims can most properly be analyzed as allegations of "cruel and unusual punishment" under the Eighth Amendment.[6] The Eighth Amendment prohibits prison officials from the "unnecessary and wanton infliction of pain," which includes "deliberate indifference" to the "serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). The protections provided to post-conviction inmates under the Eighth Amendment also extend to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (citation omitted).

A cause of action for denial of medical care has both an objective and subjective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2005). For the objective component, the inmate must show that a "sufficiently serious" medical need existed. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A "sufficiently serious" medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Lockett v. Suardini*, 526 F.3d 866, 877

---

[6] In the amended complaint, Plaintiff also mentions he was deprived of his right to be free from "illegal confinement and imprisonment" and "physical abuse, coercion and intimidation" (Court File No. 16 ¶ 35). However, he does not offer any factual or legal support for either argument in his complaint or filings with this Court to demonstrate a genuine issue of material facts exists with respect to either issue. Moreover, to the extent Plaintiff's claim of physical abuse, coercion, and intimidation is related to the alleged denial of medical care, the analysis above encompasses that claim.

7

(6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897). When the prisoner's injury is "minor or nonobvious," the court may determine the seriousness of his medical needs by looking at "the effect of a delay in treatment." *Id.* Under those circumstances, "verifying medical evidence" is necessary to "assess whether the delay caused a serious medical injury." *Id.* (quoting *Blackmore*, 390 F.3d. at 898).

The subjective component requires a showing that the prison official was "deliberate[ly] indifferen[t]"; that is, he had "a sufficiently culpable state of mind," *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lockett*, 526 F.3d at 877 (quoting *Farmer*, 511 U.S. at 837). The plaintiff must "demonstrate deliberateness tantamount to intent to punish." *Loggins v. Franklin Cnty.*, 218 F. App'x 466, 472 (6th Cir. 2007) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)); *see Whitley v. Albers*, 475 U.S. 312, 319 (1986) (" To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

### 1. Deputy Sheriff Dustin Cranfield

Upon considering the relevant case law and the facts of this case, this Court concludes no reasonable jury would find Deputy Sheriff Dustin Cranfield committed a constitutional violation. Even viewing the facts in the light most favorable to Plaintiff, Plaintiff has not shown a genuine issue of material fact exists with respect to whether his alleged injuries were "sufficiently serious."

8

*Blackmore*, 390 F.3d at 895. Plaintiff's alleged medical needs arose from an altercation that occurred at the McMinn County Detention Facility, as opposed to needs stemming from a preexisting medical condition. Therefore, the Court must consider whether Plaintiff's injuries were so obvious that even a layperson would have seen the need for medical assistance. *See Lockett*, 526 F.3d at 877. Plaintiff claims he sustained injuries from being struck in the head at least once by a fellow inmate as he emerged from the shower (Court File No. 45-1 at 35-36). Although the Court does not doubt such an encounter could cause physical injuries that require medical attention, the record is devoid of facts from which a reasonable factfinder could determine Plaintiff's case should proceed to trial under the applicable law. After the incident, Plaintiff went to his bed and did not submit a medical request form to one of the defendants until five hours later, at which point he claims he requested ibuprofen (Court File No. 37, 40, 43).[7] The request for ibuprofen is not tied in any way to the altercation or any injuries that resulted from the altercation. Plaintiff does not provide any further description regarding his physical condition on September 10 including any information that would suggest that a reasonable person would see he was in need of medical care. Plaintiff encountered Officer Cranfield the following day around approximately 1:00 p.m and 11:30 p.m; again, however, he does not provide sufficient facts about his physical injuries at those times from which a reasonable factfinder could conclude his injuries were so obvious that they had to be "sufficiently serious."

Plaintiff attempts to convey the seriousness of his injuries by offering a personal statement in an affidavit about his surgery on September 21, 2009, and two photographs of his injuries taken ten days after his encounter with "Nick" (Court File No. 49-2). Plaintiff's photographic submissions

---

[7] Plaintiff may have also, or in the alternative, requested Tylenol (*See* Court File No. 40).

9

and his statement, however, are insufficient to establish the obviousness of his alleged injuries. By offering a picture taken ten days after the incident, Plaintiff's evidence fails to account for the numerous intervening events and circumstances that may have potentially worsened his physical injuries. Moreover, although Plaintiff's statement about his surgery provides context regarding the surrounding circumstances, it does not address the Court's broader concern--that is, Plaintiff has failed to demonstrate that the alleged denial of treatment at the McMinn County Detention Facility was the cause of his more serious medical needs. Plaintiff must submit "verifying medical evidence" to establish the seriousness of his injury when it is based on the effect of a delay in medical treatment. *See Lockett*, 526 F.3d at 877. Evidence such as expert testimony or a statement from Plaintiff's treating physician would have assisted Plaintiff in meeting this requirement. However, such evidence is noticeably absent in the materials that accompanied Plaintiff's response to Defendants' motion for summary judgment. Thus, the Court concludes Plaintiff has not shown that he had a "sufficiently serious" medical need.

Although the Court's analysis could stop here, it will also note that even if Plaintiff had established the objective prong, he has not shown an Eighth Amendment violation occurred. To establish an Eighth Amendment violation for the deprivation of medical care, Plaintiff must also show Defendant was "deliberately indifferent" to his medical needs. Here, Plaintiff encountered Defendant twice, and on at least one of those occasions, Plaintiff requested assistance orally and Defendant say he would try to get help. Plaintiff wants the Court to infer that Defendant had a sufficiently culpable state of mind because, ultimately, Plaintiff never received medical attention. However, the Court only has the facts in the record and those facts reveal that Officer Cranfield said he was willing to try to help Plaintiff. Although Defendant's efforts did not result in Plaintiff

10

receiving medical care, Plaintiff has not shown that this resulted from anything more than inadvertence or an error in good faith. Certainly, Plaintiff has not alleged facts to show Defendant's conduct was tantamount to him trying to punish Plaintiff. *See Loggins v. Franklin Cnty.*, 218 F. App'x at 472. Accordingly, Plaintiff's § 1983 claim against Defendant Cranfield is **DISMISSED**.

### 2. Deputy Sheriff Amanda Bricker

Plaintiff also claims Deputy Sheriff Amanda Bricker violated his right to receive adequate medical care under the Eighth Amendment. However, for reasons similar to those explained above, Plaintiff has failed to demonstrate that Defendant committed a constitutional violation. Plaintiff has not presented sufficient evidence to show he had a "sufficiently serious" medical need when he encountered Defendant Bricker the evening of September 11 while being transferred from the CX block to the DX block. He offers no description of his physical condition at that time or earlier to demonstrate the obviousness of his condition or to show the effect of the delay in treatment. Moreover, Plaintiff has not shown any genuine issue of material fact exists with respect to whether Defendant was deliberately indifferent. Plaintiff never claims he asked Defendant Bricker for medical assistance nor is there any evidence in the record that shows Defendant Bricker was aware Plaintiff had made requests for assistance but never received help. In the absence of any showing of a constitutional violation on the part of Defendant Bricker, Plaintiff's § 1983 claim is **DISMISSED**.

### 3. Former Sheriff Steve Frisbie

The Court concludes no reasonable factfinder could find former Sheriff Steve Frisbie violated Plaintiff's Eighth Amendment right to receive adequate medical care. As a preliminary matter, Defendant Frisbie cannot be held responsible for the actions of the individual jailers under

11

the theory of *respondeat superior*. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, Plaintiff must demonstrate Defendant denied Plaintiff of medical care under the same two-prong analysis as the other defendants. Neither prong of the analysis can be met, however, because it is undisputed that Defendant Frisbie did not interact with Plaintiff at McMinn County Detention Facility. Moreover, Plaintiff presents no evidence to show Defendant was even aware of the incident while Plaintiff was in custody.[8] Because Plaintiff has failed to make any showing to establish a denial of adequate medical care under the Eighth Amendment with respect to Defendant Frisbie, Plaintiff's § 1983 claim against Defendant Frisbie is **DISMISSED.**

### 4. Deputy Sheriff Aisha Scruggs

For similar reasons as the other individual defendants, Plaintiff has failed to demonstrate Deputy Sheriff Aisha Scruggs committed a constitutional violation. First, Plaintiff has failed to demonstrate his injuries were "sufficiently serious" when he encountered Defendant Scruggs. As with the other defendants, Plaintiff has not offered evidence from which the Court can conclude Plaintiff's injuries were so obvious or the delay was so detrimental to satisfy the objective prong of the Court's analysis.

Moreover, Plaintiff has failed to demonstrate Defendant Scruggs was deliberately indifferent to his medical needs. Plaintiff testified at his deposition that he handed an emergency medical request form to "Shea" or Officer Scruggs approximately five hours after his altercation with "Nick" (Court File No. 45-1 at 44-45). He claims that he also asked for ibuprofen but Defendant Scruggs

---

[8] Plaintiff's only interaction with Defendant Frisbie occurred post-release on September 15, 2009, when Plaintiff arranged a meeting to find out if the County would pay for his medical expenses (Court File No. 45-1 at 41-42). Plaintiff offers no other details about this meeting and does not raise this as an issue in his response brief.

responded Plaintiff would not be getting medical help. Plaintiff wants the Court to infer Defendant Scruggs was deliberately indifferent because she told him he would not get medical help and, in fact, he did not receive treatment. However, based on the limited facts in the record, it is the Court's understanding that the procedure for receiving medical care involves the inmate submitting a nurse request form to an officer and the nurse, as opposed to the jailer, determining whether an inmate receives care. Here, Defendant appears to have followed the jail's policy by taking Plaintiff's emergency medical request form, and Plaintiff even concedes that his understanding was that Defendant was taking the form to a nurse (*id.* at 45). In the absence of any additional evidence against Defendant Scruggs, the Court concludes Plaintiff has failed to make a sufficient showing that Defendant Scruggs was deliberately indifferent to his medical needs. Hence, under either the objective or subjective analysis, Plaintiff's § 1983 claim against Defendant Scruggs is **DISMISSED**.

### 5. Lori McDaniel

Finally, the Court concludes Plaintiff has failed to demonstrate a genuine issue of material fact exists with respect to whether Deputy Sheriff Lori McDaniel violated Plaintiff's Eighth Amendment rights. Plaintiff claims he interacted with a male jailer named "Officer McDaniel" on at least three occasions following his altercation with "Nick." However, it is undisputed that Lori McDaniel, the individual named in the amended complaint nearly a year after the original complaint was filed, is a female jailer. Defendants contend Lori McDaniel had absolutely no interaction with Plaintiff. Moreover, they claim there is a male jailer named Jeff McDaniel who was employed at McMinn County Detention Facility at the time of the alleged incident involving Plaintiff. Jeff McDaniel, however, has never been served nor has Plaintiff ever attempted to correct this potential error (Court File No. 42-1 ¶ 1).

13

Although Plaintiff had an opportunity to respond to these issues regarding Defendant Lori McDaniel--as well as the other service of process issues raised in Defendants' motion for summary judgment--Plaintiff completely avoided this issue in his response to Defendants' motion. Accordingly, without specifically ruling on the "sufficiency of service of process" issue, the Court finds that Plaintiff has effectively waived any objection to Defendants' arguments with respect to Defendant Lori McDaniel. Plaintiff has failed to present any evidence that female jailer Lori McDaniel committed the purported acts of the male jailer bearing the same last name. In the absence of any evidence of a constitutional violation on the part of Lori McDaniel, Plaintiff's § 1983 claim against Defendant Lori McDaniel is **DISMISSED**.

Accordingly, the Court will **GRANT** summary judgment with respect to Plaintiff's § 1983 claims for Defendants Dustin Cranfield, Amanda Bricker, Steve Frisbie, Aisha Scruggs, and Lori McDaniel in their individual capacities.

**B.     McMinn County, McMinn County Sheriff's Department, and the Officers in their Official Capacities**

Plaintiff brings a § 1983 claim against the municipality McMinn County, which would encompass his separate claim against the McMinn County Sheriff's Department. The Court will construe Plaintiff's claims against the officers in their official capacities as claims against McMinn County. *See Will*, 491 U.S. at 71. According to Plaintiff, Defendant McMinn County "recklessly, and with callous disregard for the rights of individuals, suc[h] as Plaintiff, trained, encouraged a[n]d allowed the Defendant Deputies to disregard the rights of accused individuals and specifically set forth and implemented a policy with regard to the detention of accused individuals, such as Plaintiff, to deprive those individuals of treatment while in custody" (Court File No. 16 ¶ 45). Plaintiff also

asserts that McMinn County negligently and improperly trained its Deputies, and due to McMinn County's negligence, Plaintiff was injured (*id.* ¶¶ 49-50).

Although Plaintiff's arguments are well-taken, the Court concludes Plaintiff has failed to make a claim against McMinn County that rises to the level of a constitutional violation. First, Plaintiff offers no evidence to show McMinn County had an official policy that authorized Defendants to deny inmates of their right to adequate medical care, nor does Plaintiff identify any official policies that had the effect of depriving him or other inmates of their rights. *See Cash*, 388 F.3d at 542. Furthermore, with respect to training, Plaintiff has not identified any specific inadequacies in McMinn County's training program. Defendants Cranfield, Scruggs, and Bricker all state in their affidavits that they have attended the in-service training sessions required by the State of Tennessee and have been trained in all of McMinn County's policies and procedures regarding the operation of the jail (Court File Nos. 42-2, 42-3, 42-4).

In the absence of any specific policies or procedures, Plaintiff can still make out his § 1983 claim against McMinn County by showing it has engaged in a widespread practice or custom of violating inmates' constitutional rights. The only "practice" the Court can decipher from Plaintiff's argument is that he believes McMinn County has implicitly authorized its jail personnel to passively observe but not obtain medical assistance for inmates suffering from serious medical problems even after they have made requests for help (Court File No. 49 at 2-3). Assuming arguendo that this is even a "practice" and that it is engaged in by McMinn County jail personnel, Plaintiff has not demonstrated this practice is "so permanent and well settled" that it effectively serves as a "custom" that carries the force of law. *See Monell*, 436 U.S. at 691. Other than his own experience, Plaintiff has failed to offer even one example of another inmate in the McMinn County Detention Facility

15

who has been deprived of his right to adequate medical care under similar circumstances. Although the Court certainly sympathizes with Plaintiff's predicament, it cannot hold McMinn County liable for having a widespread practice or custom of violating the Eighth Amendment rights of inmates when Plaintiff has failed to demonstrate a genuine issue remains for trial on this claim.

Accordingly, the Court **GRANTS** summary judgment with respect to Plaintiff's § 1983 claim for Defendants McMinn County, the McMinn County Sheriff's Department, and the officers in their official capacities.

### IV.    42 U.S.C. § 1985 CLAIM

Plaintiff alleges Defendants engaged in a conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985. To allege a conspiracy under § 1985(3), Plaintiff must show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bhd. of C & J v. Scott*, 463 U.S. 825, 828-29 (1983)). Plaintiff must present evidence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Estate of Smithers* ex rel. *Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) (citing *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000)). Additionally, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (citing *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Here, Plaintiff has failed to plead any facts in his amended complaint to demonstrate a genuine issue of material fact exists with respect to his § 1985 claim. Simply stating that the officers acted "separately and in concert" to deprive him of his constitutional rights, without more, is insufficient to state a claim under § 1985. Moreover, Plaintiff has not asserted in his amended complaint that he is part of a protected class, nor has he presented any evidence of discriminatory animus. Because no reasonable factfinder would find Defendants engaged in a conspiracy against Plaintiff under the applicable law, the Court **DISMISSES** Plaintiff's § 1985 claim against all Defendants.

## V.     18 U.S.C. § 245 CLAIM

Plaintiff claims Defendants violated his civil rights pursuant to 18 U.S.C. § 245. However, 18 U.S.C. § 245 is a criminal statute "which does not give rise to any civil cause of action." *Deal v. Polk Cnty.*, No. 1:03-cv-385, 2007 WL 1387918, at *14 (E.D. Tenn. May 8, 2007) (quoting *Marshall v. Johnson*, 2005 WL 1214254, at *5 (W.D. Ky. May 19, 2005)). Furthermore, federal and state prosecutors are the only parties authorized to bring a criminal complaint against Defendants for violating this statute. *Id.* Accordingly, the Court **DISMISSES** Plaintiff's 18 U.S.C. § 245 claim against all Defendants.

## VI.    STATE LAW CLAIMS

17

Plaintiff brings what appears to be a number of state law claims against Defendants.[9] Specifically, Plaintiff alleges violations of Article 1 of the Constitution of the State of Tennessee §§ 8, 13, and 32; he also claims Defendants are liable for assault and battery, intentional infliction of emotional distress, and negligence. As state law claims brought in a federal-question case, the claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the Court has dismissed all claims over which it has original jurisdiction, thus the third rationale of § 1367(c) applies. When all federal claims have been dismissed, the preferred disposition of state law claims is dismissal, or, where a case has come into federal court on removal, remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Because Defendants removed this action from state court, the Court will **REMAND** Plaintiff's state law claims against all Defendants to the Circuit Court of McMinn County.

---

[9] Plaintiff's amended complaint does not clearly state whether Counts II, III, and IV are brought under state or federal law. Moreover, as noted by Defendants, there is also a question of whether Plaintiff has even stated a cause of action with respect to some of those claims. Nonetheless, the Court will generously construe those counts as state law claims of assault and battery, intentional infliction of emotional distress, and negligence, respectively.

## VII. CONCLUSION

The Court concludes Plaintiff's claims alleging violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 18 U.S.C. § 245 should be **DISMISSED** with respect to all Defendants. Because all federal claims have been dismissed, Plaintiff's state law claims against all Defendants shall be **REMANDED** to the Circuit Court of McMinn County.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**